

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

May 26, 1939

Hon. Walter C. Woodward
Life Insurance Commissioner
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-171
Re: Whether death cancellation agree-
ment issued by the American Indus-
trial Investment Company, a contract
of insurance.

We beg to advise that the request as contained
in your letter of May 20th has received the attention of
this department. You wish to be advised whether or not
the death cancellation agreement accompanying your letter
is an insurance contract and if the parties issuing same
should be required to comply with the insurance laws of
Texas as a condition precedent to the issuance of such
agreement.

The material provisions of said agreement read
as follows:

"In the event of the death of _____
(hereafter known as the borrower) within ten
(10) months after date the American Industrial
Investment Company agrees to cancel that cer-
tain promissory note executed by said borrow-
er on Y.___ for $____ and release all en-
dorsers, individually and collectively uncon-
ditionally, from any further liability or
obligation. And all of the provisions and
agreements embodied in said note, and the
4 3/4% Investment Certificate issued in connec-
tion therewith, shall become null and void, and

of no further force or effect, notwithstanding
anything to the contrary--

"(1) Provided said death did not result
directly or indirectly from self-destruction,
whether sane or insane, from committing an
assault or felony, or from intoxication or
any consequence thereof.

"(2) All monthly installment payments were
paid within the month they became due and no
monthly payment was delinquent over a period
of fifteen days at the time of death."

Following the above provisions, a line is left
for signature by the secretary-treasurer for the American
Industrial Investment Company and provides for a seal of
the company affixed thereto. A line is provided for the
signature of the borrower following his acceptance of the
terms of the agreement in words as follows:

"In consideration of the issuance of
the above cancellation agreement I hereby
agree to its terms and tenure, also the
various provisions embodied therein and
agree to pay the necessary charges in con-
nection."

The endorsers of the note mentioned are also required to
execute the agreement in the presence of the borrower,
who sign for the purposes and considerations therein ex-
pressed, certifying that they endorsed the note describ-
ed in the agreement.

It appears that the note itself and the 4 3/4%
investment certificate constitute and form along with
this agreement the contract between the borrower and the
company. We are not furnished such instruments and upon
the facts presented, would not like to be understood as
passing on the lawfulness of the agreement in question or
as to the legality of the operations of said company in
the use or intended use of the agreement above described

We do not think, however, the fact that an investment certificate is issued whereby the borrower shares or participates in the earnings or dividends from the loans would in any wise affect the status of the agreement as to whether or not it constitutes a contract of insurance.

"Insurance" is a word of comprehensive and various meanings. In a general sense the term signifies an agreement, for a consideration, to pay a sum of money upon the happening of a particular event or contingency, or indemnity for loss in respect of a specified subject or a specified peril; in other words, an undertaking by one party, generally designated as the "insured" or the "assured", from loss arising from named risks, for the consideration and upon the terms and under the conditions recited.....but the true character of an alleged contract of insurance cannot be concealed or changed by the use of absence of words, it being immaterial whether or not the contract on its face purports to be one of insurance, since the courts will look behind the terminology to ascertain the intent of the parties. 24 Tex. Jur., Para. 2, p. 650.

An "insurance contract" has been defined as "an agreement by which one party for a consideration promises to pay money or its equivalent or to do some act of value to the assured upon the destruction or injury of something in which the other party has an interest." Cooley's Briefs on Insurance (2nd Ed.) Vol. 1, p. 5; National Auto & Service Corp. vs. State, (Tex. Civ. App.) 55 SW 2nd 209; Burns vs. Clifford County Estates, 143 Misc. 813, 18, 256 N. Y. S. 671, 73; Attorney General vs. C. E. Osgood Co., 249 Mass. 473, 144 N. E. 371, 35 A. L. R. 1037; State vs. Beardsley, 88 Minn. 20, 92 N. W. 472; Eanes vs. Home Insurance Co., 94 U. S. 621, 29, 24 Lawyer's Ed. 298; Equity Service Corp. vs. Agull, 281 N. Y. S. 292.

The agreement in question provides against any loss incurred by the estate of the borrower, contingent upon his death within ten months after date of the loan and provided no monthly payment is delinquent over fifteen

days at the time of death or that death did not result
directly or indirectly from self-destruction and other
conditions not necessary to be re-stated. While the
borrower does not receive, so far as the fact of the
agreement discloses, any particular sum of money, the
consideration for a loan manifestly appears to be one
and the same for th°contract or agreement and the invest-
ment certificate recit.d therein. Upon death happening
within the terms of the agreement, the company is bound
to cancel any balance of the loan remaining unpaid and
such is an act of value to the borrower.

In the case of Equity Service Corporation vs.
Agull, supra, there was involved a contract under which
plaintiff loaned defendant two hundred ($200.00) dollars
and was given a chattel mortgage on defendant's car. By
the contract, defendant agreed to pay two hundred and
sixty ($260.00) dollars unless the car was destroyed or
lost, in which event the debt was to be cancelled. It
was held that this constituted an insurance contract
under the New York insurance laws for the issuance of
which plaintiff had not been licensed.

It has been held that the cancellation of the
debt is the equivalent of the payment of money to the
estate of the customer. Attorney General vs. C. E.
Osgood Co., supra, 35 A. L. R. 1037 and annotations.

We are unable to distinguish the holding in
the case last cited, which involves the transferring of
title to property for which the notes were executed,
upon death occurring within the terms of said contract,
from the agreement in question. The statutory definition
involved in that case was essentially the same as Cooley's,
above quoted. As pointed out by the Massachusetts Supreme
Court in this case:

"The cancellation of the debt and the
transfer of title to the personal property
spring out of the agreement, and are in per-
formance of its terms. The customer paying
to the defendant the consideration for the
doing of these things and the money handed

Hon. Walter C. Woodward, May 26, 1939, Page 5

to it as deposits and as the partial payments made from time to time. The cancellation of the debt and the transfer of the title to the personal property occur upon the death of the customer. That loss of his life is plainly something in which the customer has an interest. Every element of the statutory definition of insurance is present."

You are respectfully advised, therefore, that in the opinion of this department the death cancellation agreement submitted and herein described is a contract of insurance and the parties issuing same must comply with the insurance laws of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Wm. J. R. King
Assistant

WmK:AW

APPROVED:

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY HBB
CHAIRMAN